UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>NATIONWIDE MUTUAL INSURANCE CO., an Ohio corporation; and DOES 1 through 25, inclusive,<br><br>                Defendants. | Case No.: 2:22-cv-06177-MEMF-SK<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT; GRANTING REQUEST FOR JUDICIAL NOTICE [ECF NO. 12, 13]** |

      Before the Court are a Motion to Dismiss the First Amended Complaint (ECF No. 12) and a Request for Judicial Notice (ECF No. 13) filed by Defendant Nationwide Mutual Insurance Co. For the reasons stated herein, the Court GRANTS the Request for Judicial Notice and GRANTS IN PART the Motion to Dismiss the First Amended Complaint.

/ / /

/ / /

/ / /

/ / /

1

# BACKGROUND

## I. Factual Background[1]

Plaintiff Sonya Valenzuela ("Valenzuela") is a citizen of California. ¶ 4. Defendant Nationwide Mutual Insurance Co. ("Nationwide") is an Ohio corporation that does business with California residents. ¶¶ 3, 5.

Nationwide operates a website, www.nationwide.com ("the Website"). *See* Introduction. The Website includes a chat feature, which allows customers to have conversations with Nationwide. ¶¶ 9, 11, 14. Visitors to the Website share sensitive personal data with Nationwide through this chat feature. ¶ 14.

Nationwide pays a third-party company—"Akamai," a/k/a "Kustomer"—to embed code in to the Website which allows Akamai to monitor and store the conversations that occur through the chat feature. ¶ 11. Akamai is not a defendant or otherwise a party to this litigation. Nationwide contracted with Akamai in part because Akamai specializes in harvesting data from conversations for financial gain. ¶ 12. Nationwide does not inform customers who use the chat feature that this monitoring of conversations, storing of transcripts, or data harvesting occurs. ¶¶ 13, 17. Nor does Nationwide obtain customers' consent. ¶ 13.

Valenzuela visited the website at an unspecified time "within the statute of limitations period." ¶ 16. Valenzuela used, among other devices, a smart phone to visit the Website. ¶ 33. Valenzuela communicated with Nationwide using a smartphone or similar device enabled with cellular technology. *Id.*

## II. Procedural History

Valenzuela filed her Complaint in Los Angeles County Superior Court on July 26, 2022. *See* ECF No. 1-1 ("Complaint" or "Compl."). Nationwide removed the action to this Court on August 30, 2022. *See* ECF No. 1 ("Notice of Removal").

---

[1] All facts stated herein are taken from the allegations in Plaintiff Sonya Valenzuela's First Amended Complaint unless otherwise indicated. ECF No. 9

Valenzuela filed a First Amended Complaint on September 20, 2022. ECF No. 9 ("FAC"). Valenzuela alleges two causes of action: (1) Violations of the California Invasion of Privacy Act pursuant to California Penal Code § 631 ("Section 631"); and (2) Violations of the California Invasion of Privacy Act pursuant to § 632.7 ("Section 632.7"). Valenzuela brings this suit as a purported class action. *See* FAC. She asserts that the class is "All persons within California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website using cellular or landline telephony, and (2) whose communications were recorded and/or eavesdropped upon without prior consent." FAC ¶ 20. The Court has not yet ruled on class certification. *See generally* ECF Nos. 1-20.

Nationwide filed its Motion to Dismiss the First Amended Complaint and Memorandum of Points and Authorities in support on October 14, 2022. ECF No. 12 ("Motion"); ECF No. 12-1 ("MPA"). Also on October 14, 2022, Nationwide filed a Request for Judicial Notice in Support of its Motion, along with fourteen documents that Nationwide requests the Court take notice of. ECF No. 13 ("Request for Judicial Notice" or "RJN"); ECF No. 13-1 ("RJN Exhibits"). Valenzuela filed an Opposition to the Motion and an Opposition to the Request for Judicial Notice on May 4, 2023. ECF No. 17 ("MTD Opp'n"); ECF No. 17-1 ("RJN Opp'n"). Nationwide filed a Reply in Support of the Motion to Dismiss and a Reply in Support of the Request for Judicial Notice on May 11, 2023. ECF No. 18 ("MTD Reply"); ECF No. 19 ("RJN Reply"). Nationwide filed a Notice of Supplemental Authority on May 30, 2023. ECF No. 22. Nationwide filed a second Notice of Supplemental Authority on July 18, 2023. ECF No. 27.

The Court held a hearing on the Motion to Dismiss and Request for Judicial Notice on June 15, 2023.

## **REQUEST FOR JUDICIAL NOTICE**

### I. **Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in

public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

## II. Discussion

Here, Nationwide requests judicial notice of fourteen documents, the RJN Exhibits, which Nationwide describes as complaints filed by Valenzuela in Los Angeles County Superior Court and the United States District Court for the Central District of California. *See* RJN at 2-3. Valenzuela disputes the relevance of these documents, and notes that "[t]here is no prohibition against suing multiple parties in different lawsuits for separate and distinct" violations of the law.[2] *See* RJN Opp'n at 1-2. However, Valenzuela does not dispute that the RJN Exhibits are indeed what Nationwide describes them as. *See generally* RJN Opp'n.

The Court finds that it is an undisputed matter of public record that the RJN Exhibits exist and were filed by Valenzuela in various courts as Nationwide describes. *See Lee*, 250 F.3d at 690. Accordingly, the Court will take judicial notice that these documents exist and are as Nationwide describes. *See id.* (a court may take judicial notice of the "existence" of a court document, "which is not subject to reasonable dispute over its authenticity."). The Request for Judicial Notice is GRANTED.

## MOTION TO DISMISS

## I. Applicable Law

Nationwide brings its Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). *See* Motion at 2. Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[2] The Court does not find these documents relevant to determining the merits of this Motion, as evidenced by the fact that they are not discussed in the remainder of this order. The Ninth Circuit has cautioned courts to generally avoid "making credibility determinations against serial litigants" in Americans with Disability Act ("ADA") cases unless there is "something other than the fact that the litigant files a lot of [lawsuits]" that would lead a court to question the plaintiff's credibility. *See Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023). Although *Langer* is not directly applicable, as this is not an ADA case, its reasoning largely applies here. *See id.* The Court is not inclined to question Valenzuela's allegations on the basis that she has filed other similar lawsuits. Nevertheless, this is not a justification to deny the request for judicial notice.

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Labels, conclusions, and "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

A properly pleaded complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Although fair notice alone is not sufficient—a complaint must also plausibly state a claim as described above—fair notice is necessary for a complaint to survive a Rule 12 Motion. *See id.*

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

II. **Discussion**

Valenzuela brings claims under two different sections of the California Invasion of Privacy Act (CIPA), Section 631 and Section 632.7. *See* Compl. ¶¶ 26-37. Although Section 631 and Section 632.7 are Penal Code statutes, the Penal Code authorizes civil liability for violations. *See* Cal. Penal Code § 637.2.

Nationwide's Motion seeks dismissal of both claims. *See* MPA at 8. As discussed below, the Court finds that Valenzuela has stated a claim under Section 631 but has not stated a claim under Section 632.7.

**A. Valenzuela has stated a claim that Nationwide aided Akamai in violating Section 631 (first cause of action).**

Section 631 has been interpreted by California courts as containing three different clauses which cover "three distinct and mutually independent patterns of conduct."[3] *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978). The three patterns of conduct that Section 631 prohibits are: (1) "intentional wiretapping;" (2) "attempting to learn the contents or meaning of a communication in transit over a wire;" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Id.*; *see also* Cal. Penal Code § 631(a). In addition to these three clauses, Section 631 contains an aiding provision which imposes liability on anyone who "aids, agrees with, employs, or conspires with any person or persons" in violating the three clauses described above. *See* Cal. Penal Code § 631(a).

There is a generally a "party exception" to Section 631. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607-608 (9th Cir. 2020). A party to a conversation cannot logically be liable for "eavesdropping" on a conversation, so a party to a communication is not liable for learning the contents of that communication. *Id.* Further, the second clause of Section 631 only applies while

---

[3] California courts have noted that Section 631's text is somewhat difficult to understand. *See, e.g.*, *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979). The relevant part of Section 631 reads, in whole:

> Any person who, [Clause 1:] by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [Clause 2:] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [Clause 3:] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [Aiding Provision:] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable . . . .

Cal. Penal Code § 631(a).

a communication is "in transit or passing over any wire, [etc]., or is being sent [] or received." Cal. Penal Code § 631(a). Therefore, Section 631 does not prohibit a party to a conversation from recording the conversation with a device and *later* sharing the recording with a third party. *Rogers v. Ulrich*, 897-99 (Ct. App. 1975). However, a third party listening in on communications *at the time they are received* via a device is a violation of Section 631. *Ribas v. Clark*, 38 Cal. 3d 355, 363 (1985). Further, when a first party intends to communicate with a second party, and computer code automatically directs the communication to an additional third party, the third party is not construed as a party to the communication, and so the party exception does not shield the third party. *In re Facebook*, 956 F.3d at 607. The Ninth Circuit has urged courts to consider the party exception "in the technical context of [the] case." *Id.*

Here, Nationwide argues that Valenzuela failed to state a claim under any of three main clauses, and as a result, has also failed to state a claim under the aiding provision. *See* MPA 11–18. Valenzuela disagrees and argues she has stated a claim under each of the three clauses, and also states a claim that Nationwide aided Akamai in violating Section 631. *See* MTD Opp'n at 1–11.

The Court holds that Valenzuela's FAC properly pleads at least one theory as to Nationwide's liability, as described below.

    1.    <u>Valenzuela has plausibly alleged that Akamai violated Section 631, and that Nationwide aided Akamai in doing so.</u>

Akamai is not a defendant in this action. *See generally* FAC. However, Valenzuela alleges that Nationwide "aided, abetted, and even paid third parties to eavesdrop" on her conversations.[4] Section 631 imposes liability on anyone who "aids" another in violating the three main clauses. *See* Cal. Penal Code § 631(a). So, the Court must analyze whether Valenzuela has properly alleged that third party Akamai violated Section 631, and whether Valenzuela alleged that Nationwide aided in the alleged violation, in order to determine whether Valenzuela has stated a claim against Nationwide.

---

[4] In context, it is quite clear that "third parties" is a reference to Akamai. The only third party mentioned in the FAC is Akamai. *See generally* FAC.

        *a.*    *Valenzuela alleged that Akamai violated the second clause of Section 631.*

The second clause of Section 631 imposes liability on anyone who:

> willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state

Cal. Penal Code § 631(a).

The statute contains several independent requirements that must be met for a person to violate this clause. First, the person must read, or attempt to read or to learn, the contents of a message or similar communication. *See id.* Second, this must be done without consent of "all parties," or in some other "unauthorized manner." *See id.* Third, this must be done while the message is "in transit," or passing over a wire, or being sent or received from within California. *See id.* Fourth, this must be done willfully. The Court will examine Valenzuela's allegations in light of these requirements.

First, Valenzuela plausibly alleged that Akamai read, or attempted to read or to learn, the contents of her messages. She alleged that Nationwide paid Akamai to "embed code" into the website that "enables Akamai to secretly intercept in real time, eavesdrop upon, and store transcripts" of messages sent via chat feature. FAC ¶ 11. Valenzuela alleged that Akamai's business model is to harvest data from communications. *Id.* ¶ 12. Valenzuela further alleged that she visited the website and communicated with Nationwide via her smartphone. *Id.* ¶¶ 16, 33. Drawing all inferences in Valenzuela's favor, as the Court must on a motion to dismiss, these allegations amount to a plausible claim that Akamai intercepted Valenzuela's messages and harvested data from them, which would almost certainly constitute reading, or attempting to read or to learn.

Although Valenzuela has not alleged specifically that she used the chat feature, as Nationwide notes, this is not fatal to her claim. MPA at 7-8. That Valenzuela used the chat feature is a plausible inference from her allegations. Taken together, the allegations that Valenzuela communicated with Nationwide (FAC ¶ 33), that Valenzuela visited the Website (*id.* ¶ 16), that Nationwide "caused" Valenzuela's "internet communication [] with Defendant's Website to be

recorded" (*id.* ¶ 29), and the description of the chat feature (*id.* ¶ 11) suggest that Valenzuela used the chat feature.[5]

Nationwide also points out that "there is no allegation that Akamai *actually* intercepted any communication by Plaintiff." MPA at 15 (emphasis in original). But at this stage, Valenzuela's allegations are sufficient. She alleged that Akamai is capable of intercepting messages, that she sent messages, that Nationwide "caused the internet communication between [Valenzuela] and Class Members with [Nationwide]'s Website to be recorded" by Akamai's software, and that Nationwide "aided, abetted, and even paid [Akamai] to eavesdrop upon such conversations." FAC ¶¶ 11, 29. Further, Akamai's business model appears to rely on intercepting all or nearly all messages for mass data analysis. *See* FAC ¶¶ 11–12. These amount to a sufficient allegation that Akamai intercepted Valenzuela's messages.

Nationwide further argues that Valenzuela failed to allege the contents of her communications. *See* MPA at 16. Nationwide notes that Valenzuela has not alleged "she herself shared personal data," or identified what data she shared. *Id.* But the second clause does not require that personal data be shared, it only requires reading the contents of a communication. Valenzuela alleged that she communicated with Nationwide; if she communicated, the communications must have had some content. *See* FAC ¶ 33. Failing to allege what specifically she communicated does not undermine her allegation that Akamai learned the contents of her communications. Nationwide also cites *In re Zynga Privacy Litig.*, where the Ninth Circuit analyzed federal law and distinguished the "contents" of communications from "record information" about communications. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014). Record information includes items such as "name," "address," "subscriber number," etc. *See id.* Here, this distinction is not dispositive. It is not clear from the allegations in the FAC what "data" Akamai "harvests," and it may be the case that Akamai only uses record information. *See* FAC ¶ 9. But Valenzuela has alleged that Akamai "eavesdrop[s]

---

[5] The purported class is specifically limited to people who "communicated with [Nationwide] via the chat feature on [Nationwide]'s Website." FAC ¶ 20. If Valenzuela did not, she would not be a member of the class. But whether Valenzuela is actually within her purported class is a question for class certification, not for a motion to dismiss. *See* Fed. R. Civ. P. 23(a)(3) (class representative must have claims "typical" of the claims of the class).

on the conversations" and that "transcripts can [] be 'data harvested.'" *Id.* From these allegations, a plausible inference is that Akamai reads the actual contents of messages and does not simply harvest record information. In sum, Valenzuela has met the second clause's first requirement by alleging that Akamai learned the contents of her communications with Nationwide. *See* Cal. Penal Code § 631(a).

Valenzuela has also met the other requirements. As to the second, Valenzuela clearly alleged that Akamai did not have the consent of all parties. *See* Cal. Penal Code § 631(a). Specifically, Akamai did not have Valenzuela's consent. FAC ¶¶ 13, 19. As to the third, Valenzuela alleged that Akamai intercepted her messages while they were "in transit." *See* Cal. Penal Code § 631(a). Her complaint makes clear that she alleges Akamai can "intercept [chat communications] in real time." *Id.* ¶ 11; *see also id.* ¶ 24. Nationwide describes this as "conclusory," but this is not a "threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *See* MPA at 17; *Iqbal*, 556 U.S. at 663. Valenzuela did not simply recite that there was real time interception, she added detail on how it occurs (through the code Nationwide paid Akamai to embed) and pointed to statements from Akamai regarding "[r]eal-time insights" and [d]ata from every use event *collected as it happens*."[6] FAC ¶¶ 11–12 (emphasis added). The allegation of real time interception is

---

[6] In its first Notice of Supplemental Authority, Nationwide brought the recently decided case *Valenzuela v. Keurig Green Mountain, Inc.* to the Court's attention, which involved the same plaintiff as here and somewhat similar facts. *See* ECF No. 22; *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-CV-09042-JSC, 2023 WL 3707181 (N.D. Cal. May 24, 2023). *Keurig Green Mountain* held that Valenzuela's allegations that messages were intercepted in transit were conclusory and insufficient. *See Keurig Green Mountain*, 2023 WL 3707181 at *5. *Keurig Green Mountain* is not binding on this Court. But even if it were, it is significantly factually distinguishable on this point. In *Keurig Green Mountain*, Valenzuela allegedly only that "Defendant's code 'allows the [third party] to secretly intercept in real time,'" without any further detail or support. *See id.* The third-party code installer was not named specifically in *Keurig Green Mountain*, and not described in any detail. *See id.* at *4. Here, Valenzuela specifically named Akamai, and added significant Akamai-specific factual allegations that make it plausible and not conclusory that Akamai intercepts in real time. In particular, the alleged statements from Akamai regarding "real-time insights" and [d]ata from every use event collected as it happens" bring the allegations of real time interception over the plausibility threshold. *See* FAC ¶¶ 11–12. The case Nationwide pointed to in its second Notice of Supplemental authority—*Garcia v. Build.com, Inc. et al*, No. 3:22-cv-01985-DMS-KSC (S.D. Cal. July 13, 2023) ("This claim fails because the Complaint does not plausibly allege the existence of a third-party eavesdropper.")—is distinguishable on the same grounds, based on the Akamai-specific allegations. These same allegations also distinguish this case from the other (non-binding) cases Nationwide cites for its argument that allegations of real-time interception are insufficient. *See* MPA at 17; *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1227-28 & n.9 (C.D. Cal. 2017) (plaintiffs failed to describe "when they believe [Defendant] intercepts messages" and made conclusory allegations); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7

plausible based on the factual support alleged. Nationwide also is on notice as to Valenzuela's theory; although Nationwide attempts to argue it does not understand (MPA at 17), the SAC makes quite clear that Valenzuela's allegation is that Akamai's code intercepts chat messages in real time and stores transcripts, which gives Nationwide plenty of notice on what is alleged. *See* SAC ¶ 11. Nothing more than this combination of plausibility and notice is required at this stage. *See Twombly*, 550 U.S. at 555. Finally, as to the fourth requirement, it is a reasonable inference from Valenzuela's allegations that Akamai acted "willfully" when it engaged in the alleged conduct. *See* Cal. Penal Code § 631(a). Accordingly, Valenzuela has stated a claim that Akamai violated the second clause, by willfully reading, or attempting to read or to learn, the contents of Valenzuela's communications, while the communications were in transit, without Valenzuela's consent. *See* Cal. Penal Code § 631(a).

### b. *Valenzuela alleged that Akamai violated the third clause*

The third clause of Section 631 prohibits using, or attempting to use, information gained in violation of the first or second clause "in any manner, or for any purpose." Cal. Penal Code § 631(a). Valenzuela stated a claim that Akamai violated the third clause.

Valenzuela alleged that Akamai uses the data it collects. Valenzuela alleged that Akamai's business model is to harvest data "for the benefit of its clients." FAC ¶ 12. She alleged that Nationwide contracted with Akamai in order to benefit from this data harvesting, among other reasons. *Id.* She further alleged that Nationwide and Akamai's conduct allows transcripts to "be 'data harvested' for financial gain." *Id.* ¶ 9. These allegations lead to a plausible inference that Akamai is using the information it gathers in some manner for Nationwide's benefit. Nothing more is required at this stage. Accordingly, she has stated a violation of the third clause by Akamai. *See* Cal. Penal Code § 631(a).

---

(S.D. Cal. Apr. 27, 2020) (plaintiff made only conclusory allegations); *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (plaintiff did not allege "an interception of his communications while 'in transit' or the use of an interception 'device.'"); *Mireskandari v. Mail*, 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) ("Plaintiff fails plausibly to plead that [Defendant] intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage."). Valenzuela alleges that Akamai intercepts messages as they are sent and received, and this is plausible based on Akamai's public statements and the other facts alleged.

      *c. Valenzuela alleged that Nationwide aided Akamai in its violations of Section 631.*

  Section 631 imposes liability on anyone who aids another in violating any of the three main clauses. *See* Cal. Penal Code § 631(a). Here, Valenzuela alleged that Nationwide hired Akamai specifically to intercept messages and use them for Nationwide's financial gain. *See* FAC ¶ 12. Further, she alleged that Nationwide facilitated Akamai embedding Akamai's code into Nationwide's website. FAC ¶ 11. These are plausible allegations that Nationwide "aid[ed]," "permit[ted]," or "cause[d]" Akamai's violations, which would lead to Nationwide itself being liable.

  In its reply, Nationwide argues that Nationwide cannot be liable for Akamai's conduct, because Akamai's collection and use of data was for Nationwide's benefit. *See* MTD Reply at 9-10. Nationwide cites several federal District Court cases for this purported rule. *See id.*, citing *Licea v. Am. Eagle Outfitters, Inc.*, No. EDCV221702MWFJPR, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023); *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF (JEM), 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). In the hearing, Nationwide stressed the importance of *Graham*, which held that a software service provider is "an extension of" the party that contracted with it and "provides a tool," and thus is "not a third-party eavesdropper." *Graham*, 533 F. Supp. 3d at 832–33. These cases are not binding on this Court, and at least two federal District Courts have held that a software vendor hired by a party to a conversation, and acting for that party's benefit, is not itself a party and therefore is not protected by the party exception. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519-21 (C.D. Cal. 2021) (" [the third-party software provider] did not become a 'party' to the communication simply because it was providing recording and transmission services for [Defendant]"); *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, *2 (N.D. Cal. Oct. 23, 2019) ("Although [Defendant] cannot be liable for eavesdropping on its own communications with [Plaintiff], the complaint adequately alleges that [Defendant] violated section 631 by enabling [the third-party software provider's] wrongdoing.").

Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a party to the conversation. It is far from clear that Akamai did not also benefit—given that Nationwide allegedly paid Akamai "substantial sums" (*see* FAC ¶ 11)—but even if Akamai acted solely for Nationwide's benefit, that would not necessarily mean Akamai did not violate Section 631 if Akamai intercepted in real time. In *Ribas*, the Supreme Court of California addressed how Section 631 applies where a spouse's friend eavesdropped on a conversation between spouses with only one spouse's consent. *See Ribas*, 38 Cal. 3d at 358. The court held that the friend's conduct violated Section 631. *Id.* at 363. This friend was acting with the permission of one spouse, and for that spouse's benefit,[7] but this did not immunize the friend from liability.[8] *See id.* However, recording a conversation with a device and later sharing the recording with others is not a violation. *See Rogers*, 52 Cal. App. at 899.

The key question is whether Nationwide's alleged actions to facilitate Akamai's alleged eavesdropping are more akin to a party recording a conversation and later sharing it with a third party, like in *Rogers*, or to a party allowing a third party to listen live, like in *Ribas*. *See Rogers*, 52 Cal. App. at 899; *Ribas*, 38 Cal. 3d at 363.[9] The Court finds that the allegations here are more like *Ribas*. Valenzuela alleged that Nationwide allowed Akamai "to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications." FAC ¶ 11; *see also id.* ¶ 29 (Nationwide "even paid third parties to eavesdrop upon such conversations."). Valenzuela has alleged that Nationwide allowed a third-party interloper to listen in on communications in real time.

---

[7] Although there is no suggestion the friend was paid, one spouse asked the friend to listen in, and the friend later testified on that spouse's behalf in divorce proceedings. *Ribas*, 38 Cal. 3d at 358. This shows that the friend was listening for that spouse's benefit.

[8] The *Ribas* court did not directly address whether the spouse could be liable for aiding this conduct, as this was not alleged and the spouse was not a defendant. *See id.*

[9] Nationwide pointed to *Licea v. Am. Eagle*, where the court agreed that the key question was whether *Rogers* or *Ribas* controls. *See* 2023 WL 2469630 at *7. The *Licea v. Am. Eagle* court held that software that allows a third party to capture messages in real time and later perform data analysis was more akin to a party using a device to record a conversation than to allowing a friend to listen real time. *See id.* at *6-*8. This was despite an allegation that the third party "eavesdrop[s] on the conversations in real time during transmission." *Id.* at 7. The court reasoned that "[d]uring the conversation, when the third party was purportedly recording and storing the transcript, the third party appears to be operating like a tape recorder." *Id.* at *8. Any later analysis or use was "on behalf of or in tangent with Defendant." *Id.* This Court disagrees, for the reasons stated above.

This is like *Ribas*. *See Ribas*, 38 Cal. 3d at 363. And although the alleged recording by Akami is somewhat akin to the recording in *Rogers*, Akamai is not a mechanical device being used by a party to a conversation. *See Rogers*, 52 Cal. App. at 899. This Court disagrees with the reasoning of *Graham*—Akamai is not merely a tool used by Nationwide akin to a tape recorder. *See Graham*, 533 F. Supp. 3d at 832–33. Rather, a plausible inference from Valenzuela's allegations is that Akamai—a corporate entity wholly distinct from Nationwide—is a third party learning the contents of communications in real time. Whether the third party's use was purely for Nationwide's benefit, rather than for its own benefit, is immaterial under the statute. Allowing a third party to listen in makes the third party liable for a violation of Section 631. *Ribas*, 38 Cal. 3d at 363. Section 631 makes clear that aiding a violation is also a violation. *See* Cal. Penal Code § 631(a). Nationwide may be liable for its conduct to aid Akamai's alleged violation.

### B. Other possible theories under Section 631 fail (first cause of action).

Valenzuela complaint does not plausibly allege any other theories of liability under Section 631, for the reasons described below.

#### 1. Valenzuela fails to state a claim under the first clause, because she has not alleged that she communicated via telephone or telegraph.

By its text, the first clause of Section 631 only applies to wiretapping of telephone and telegraph lines. The clause imposes liability on any person who: "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any *telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system." Cal. Penal Code § 631(a) (emphasis added). This is unambiguous; the statute describes several different types of telephone or telegraph lines that one might make an unauthorized connection with. It does not mention any other forms of communication, many of which are covered by other clauses of Section 631. This clause of Section 631 does not apply to communications that occur by channels other than telephone or telegram.[10]

---

[10] As Nationwide notes, at least two federal District Courts agree with this interpretation of Section 631. *See*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797; 825-26 (N.D. Cal. 2020); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134-36 (E.D. Cal. 2021).

In her complaint, Valenzuela suggests that her claim falls within the first clause because "[t]he software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualified as a 'machine, instrument, contrivance, or . . . other manner' used to engage in the prohibited conduct alleged herein." FAC ¶ 29. This ignores the fact that the first clause requires that the Defendant make *an unauthorized connection with* a *telegraph or telephone* wire, line, cable, or instrument. *See* Cal. Penal Code § 631(a) (emphasis added).

Similarly, in her opposition, Valenzuela attempts to circumvent the requirements of the first clause by pointing out that she has alleged she accessed the Website via her smartphone. *See* FAC ¶ 33; MTD Opp'n at 6. But in doing so, she was using her smartphone's *computer* function, not its *telephone* function. With modern technology, an ever-increasing number of devices contain telephone functionality. The fact that a device contains telephone capabilities does not mean courts should construe all communications from the device as telephone communications. Doing so would vastly expand the meaning of this first clause.[11] Accordingly, because Valenzuela did not communicate via telephone or telegraph, she has not stated a claim under the first clause. *See* Cal. Penal Code § 631(a).

### 2. Valenzuela fails to allege that Nationwide directly violated the second or third clauses, because Nationwide was a party to the communications.

Under the "party exception" to Section 631, a party to a communication is not liable for learning the contents of that communication. *In re Facebook*, 956 F.3d at 607-608 (9th Cir. 2020). A party to a conversation cannot logically be liable for "eavesdropping" on a conversation, and a party to a communication is not liable for learning the contents of that communication. *Id.*

---

[11] The Court expresses no view on whether it would be appropriate to apply the first clause to explicitly *telephone* communications that take place via wireless means such as Voice Over Internet Protocol (VOIP). *See* Federal Communications Commission, "Voice Over Internet Protocol (VOIP)," https://www.fcc.gov/general/voice-over-internet-protocol-voip (last visited June 13, 2023) ("Voice over Internet Protocol (VoIP), is a technology that allows you to make voice calls using a broadband Internet connection instead of a regular (or analog) phone line. . . . . [S]ome VoIP services only work over your computer or a special VoIP phone . . . ."). It is undisputed that Valenzuela's allegations do not concern *telephone* communications although she has alleged that she used her smartphone to engage in these Internet communications.

Here, Valenzuela bases her claim on communications that she sent to Nationwide. *See* FAC ¶ 33 ("Plaintiff and class members communicated with Defendant using smartphones . . ."). She cannot claim that she did not consent to Nationwide attempting to read or learn the contents of those communications. Second 631 only applies to "eavesdropping by a third party." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979).

Accordingly, Nationwide is not liable for the actions it took to read Valenzuela's messages or learn their contents. Similarly, Nationwide cannot be liable for using the contents of those messages, as it did not acquire those contents without consent. *See* Cal. Penal Code § 631(a). For this reason, Nationwide's liability is limited to the theory that Nationwide aided Akamai in Akamai's violations of the second and third clauses.

### C. Valenzuela fails to state a claim under Section 632.7 (second cause of action).

Section 632.7 prohibits interception or recording of a communication between two phones. *See* Cal. Pen Code § 632.7(a). It plainly does not apply to the fact pattern Valenzuela alleged. Valenzuela alleged that Nationwide allows Akamai to "eavesdrop" on conversations that occur through the chat feature on Nationwide's Website. *See* FAC ¶¶ 9, 11. The alleged conversations were not communications between two phones. Accordingly, Valenzuela failed to state a claim pursuant to Section 632.7.

Valenzuela argues that because she visited the Website via her smartphone, her conversations through the chat feature are covered by Section 632.7. Her argument relies on the Supreme Court of California's *Flanagan v. Flanagan* opinion, and on other cases that cite it. *See* MTD Opp'n at 12-13. In *Flanagan*, the court wrote that Section 632.7 applies to "a communication involving a cellular phone or a cordless phone." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002). Valenzuela reads Flanagan as suggesting a phone on one end of a communication, as opposed to both ends, is sufficient. MTD Opp'n at 12. But Valenzuela's reading of this quote divorces it from its context. The *Flanagan* court explained the development of Section 632.7 and related sections: the California Legislature was responding to the problem that newer types of phones did not have privacy protections that previously existed for "landline systems." *Id.* In response, the legislature sought to safeguard "the privacy of parties to calls involving cellular or cordless telephones" and so

"prohibited the malicious interception of calls from or to cellular or cordless phones (§§ 632.5, 632.6) and the intentional interception or recording of a communication involving a cellular phone or a cordless phone (§ 632.7)." *Id* (parentheses in original).

Section 632.7 prohibits intercepting or nonconsensual recording of "a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." Cal. Pen Code § 632.7(a). Every type of communication listed in the statute is between two phones. To the extent the meaning was unclear, the California Supreme Court recently clarified that Section 632.7 prohibits intrusions upon "a communication transmitted between a cellular or cordless telephone *and another telephone*." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 187 (2021) (emphasis added). This reading aligns with the statute's text. Section 632.7 does not apply to communications where there is not a phone on both ends, and *Flanagan* does not appear to have been intended to suggest that Section 632.7 covers web-based chats "involving a cellular phone." *See Flanagan*, 27 Cal. 4th at 776. Rather, the *Flanagan* court was making clear that all phone communications are equally protected, whether they are via landline phone, cordless phone, cell phone, or some combination of different types of phones. *See id.*

Valenzuela argued in the hearing that Section 632.7, by its text, includes "communications transmitted by voice, data, or image, including facsimile" and is clearly not limited to phone calls. Cal. Pen Code § 632.7(c)(3). Valenzuela urges that the Court read the statute broadly. However, reading it so broadly as to encompass web-based messages sent from the internet browser of a smart phone to another party not using a phone at all would completely divorce it from its clear limits. The Court need not decide the exact contours of what text-based communications Section 632.7 covers; the statute is limited to communications between two phones, and the allegations here do not fit that category.

Valenzuela does not allege that Nationwide, Akamai, or anyone else eavesdropped on a phone communication. She alleged that she "communicated with [Nationwide] using smartphones," which might suggest she called Nationwide. FAC ¶ 33. But all allegations regarding eavesdropping or similar conduct that might violate Section 632.7 relate to communications sent via the chat feature

on the Website. *See id.* ¶¶ 9, 11, 12, 14, 16–19, 28–30, 33–35. Therefore, Valenzuela failed to state a claim under Section 632.7.

The motion is GRANTED as to the Section 632.7 claim, and this claim will be dismissed. The dismissal will be with leave to amend, as it is possible that amending could save this claim. *See Manzarek*, 519 F.3d at 1031.

## CONCLUSION

For the reasons stated herein, the Request for Judicial Notice is GRANTED, and the Motion to Dismiss is DENIED as to the Section 631 claim and GRANTED as to the Section 632.7 claim. The second cause of action (for violations of Section 632.7) is DISMISSED with leave to amend.

Dated: August 14, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge